**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **ASHLEY CARMER**, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>**SUPPORT SERVICES GROUP, INC.,**<br><br>Defendant. | No.:<br><br>Hon. |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Ashley Carmer, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff"), by and through her attorneys, hereby brings this Collective and Class Action Complaint against Support Services Group, Inc. ("Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective action that arises out of Defendant's systemic failure to compensate its employees for all hours worked, including overtime hours worked at the appropriate overtime rate, in willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and common law.

2. This complaint also brings an individual claim that Ms. Carmer was illegally terminated in retaliation for engaging in legally protected activity under the FLSA.

3. Plaintiff and the putative collective members consist of current and former customer service representatives, fraud analysts, or similar positions, who were compensated on an hourly basis, ("CSRs"). Throughout the relevant period, Defendant maintained a corporate policy and practice of failing to compensate its CSRs for all pre- and post-shift off-the-clock work.

4. Regardless of the specific job title, or specific account, all CSRs: (1) are paid on an hourly basis; (2) are classified as non-exempt employees; (3) use the same timekeeping system(s);

(4) use many (if not all) of the same computer programs; (5) are subject to the same relevant timekeeping and attendance policies; and (6) have the primary job duty of providing assistance to Defendant's customers.

5. Defendant required its CSRs to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The CSRs only "clocked in" and received compensation *after* this preliminary work was completed, though they were required to perform this work to be "on schedule" when their scheduled shifts began.

6. A CSRs' failure to be ready and able to take calls when the scheduled shift began would result in disciplinary action.

7. The CSRs routinely worked forty (40) hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the CSRs, even those CSRs who were scheduled and paid for only forty (40) hours per week, worked over forty (40) hours per week without the required overtime premium for all time worked over forty (40) hours.

8. Defendant, through its managers, had actual and constructive knowledge that its CSRs were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its CSRs to complete this unpaid work.

9. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is Defendant's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *See* DOL

Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers* (last visited July 6, 2025).

10. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id*. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

11. Defendant's practice of failing to compensate its CSRs for all hours worked violated the CSRs' rights under the FLSA.

12. Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> ***All current and former hourly customer service representatives, fraud analysts, or similar positions, who worked for Defendant at any time during the past three years.***

13. Defendant is liable for its failure to pay its CSRs for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

14. CSRs who elect to participate in this FLSA collective action seek compensation for all off-the-clock pre- and post-shift work performed for Defendant, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

16. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant

to 28 U.S.C. § 1367.

17. Additionally, this Court has personal jurisdiction over Plaintiff's FLSA claim pursuant to 20 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

18. Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiff and the CSRs, engage in interstate commerce or in the production of goods for commerce and are therefore are also covered by the FLSA on an individual basis.

19. The Court has general personal jurisdiction over Defendant because Defendant conducts business within the Western District of Texas and maintains its principal place of business in this District.

20. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because the Defendant conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

21. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

22. Plaintiff Ashley Carmer is a resident of Sterlington, Louisiana. Plaintiff worked for Defendant as a remote Fraud Analyst from approximately December 2021 to July 2025. Plaintiff worked with Defendant's HomeServe client from approximately December 2021 to July 2022, and worked with Defendant's FanDuel client from approximately July 2022 to July 2025. Defendant compensated Plaintiff for her services as a CSR in the form of an hourly wage, most recently at the rate of $15.49 per hour. Plaintiff Carmer signed a consent form to join this collective action

lawsuit. ***Exhibit A***.

23. Additional putative Collective members were or are employed by Defendant as CSRs in multiple states during the past three years and their consent forms will also be filed in this case.

24. Defendant Support Services Group is a technology company that, among other things, provides customer service outsourcing services to clients.

25. Defendant is a corporation with its headquarters located at 601 Texas Central Pkwy, Waco, TX 76712-6526.

26. Defendant's registered agent is Andy McSwain located at 220 S. Fourth St., Waco, TX 76701.

27. Upon information and belief, Defendant employed hundreds of CSRs – including Plaintiff – within the past three years and across the United States to assist its customers with their customer service needs.

## GENERAL ALLEGATIONS

28. Throughout their employment with Defendant, Plaintiff and other CSRs were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

29. Defendant has employed hundreds of CSRs over the past three years to respond to customers concerning various issues.

30. Defendant compensated its CSRs on an hourly basis and classified them as non-exempt employees under the FLSA.

31. Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each CSR, including but not limited to: offer letters, paystubs, and/or

other payroll records.

32. Defendant's CSRs are typically scheduled to work at least eight hours per day (including a one-hour unpaid meal period), five days per week, for up to 40 or more hours in a workweek. In practice, however, the number of hours worked may vary; CSRs sometimes work fewer than 40 hours in a given week, and other times they work more. Notably, if CSRs strictly follow Defendant's standard schedule, they routinely work more than 40 hours per week due to their off-the-clock work and thus incur overtime.

33. Throughout their employment with Defendant, Plaintiff and the other CSRs' job duties included fielding inbound calls and performing a wide range of support services to customers.

34. Once hired, Defendant provided all CSRs with training on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time; the importance of attendance and schedule expectations; and Defendant's policies related to each topic. The training Defendant's CSRs receive is substantially, if not entirely, the same and all CSRs are subject to the same disciplinary policies.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

35. Defendant maintained detailed attendance and schedule adherence policies and used them to evaluate the CSRs' job performance.

36. Defendant used its attendance/schedule adherence policies to require its CSRs to arrive early and work off-the-clock so they can be ready to provide support services to customers at the start of their shift.

37. Specifically, Defendant provided a work schedule to each CSR for each shift that

dictated the work expectations of Defendant down to the minute. Defendant scheduled every CSR to contact customers, or otherwise complete work activities that required completing the boot up process described below, at the start of their shift.

38. This work schedule required Defendant's CSRs to be logged in and have loaded their essential work-related computer programs and applications at the start of their shift so they can be prepared to respond to customers the moment their shift begins. A CSRs' failure to be "on schedule" could result in poor performance evaluations, warnings, discipline, and possibly termination. Thus, Defendant forces its CSRs to perform the boot-up and login process before clocking into Defendant's timekeeping system.

39. All of Defendant's CSRs use the same or similar computer networks, software, programs, and applications in the course of performing their job responsibilities. These programs and applications are an integral and indispensable part of the CSRs' work, and they cannot perform their jobs without them.

40. Upon arriving at their computer, Defendant's CSRs were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs to access the necessary information to perform their work.

41. The pre-shift boot-up and login process generally consisted of the following steps:

a. The CSRs turned on or woke up their computer;

b. The CSRs then signed into their computer;

c. The CSRs then opened Defendant's VPN Global Protect application and logged in using two-factor authorization;

d. The CSRs then logged into Defendant's messaging and recording system, STC;

e. The CSRs then opened their internet browser;

f. The CSRs then opened Defendant's Okta system and logged in using two-factor authorization;

g. The CSRs then logged into the client’s virtual desktop using two-factor authorization;

h. The CSRs then opened the client’s VPN application and logged in using two-factor authorization;

i. The CSRs then opened Defendant’s Okta system for a second time, but this time within the client’s VPN, and logged in using two-factor authorization;

j. The CSRs then opened the NICE system;

k. The CSRs then opened the Que Metrics system;

l. The CSRs then opened the Salesforce system;

m. The CSRs then opened and logged into the Braintree system

n. The CSRs then opened the GEO Comply system and logged in using two-factor authorization;

o. Once all applications to be “on schedule” were opened, the CSRs were allowed to clock into Que Metrics no more than five minutes before the start of their shift and their time clock would start.

42. The boot-up and login process described above took substantial time on a daily basis, ranging from 20 to 25 minutes per shift, or more, depending on how fast/slow the computers and programs were operating.

43. CSRs were required to complete each of these tasks prior to “punching in,” as CSRs could not be “on schedule” until these tasks were complete.

44. Although CSRs were allowed to clock in up to 5 minutes before their scheduled shift began, this only covered a small portion of the boot-up and login process described above because it took 20 to 25 minutes on average.

45. If CSRs arrived immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be “on schedule” when their scheduled shifts began, and Defendant’s software would automatically mark

them tardy.

46. Once their shift started, Plaintiff and all other CSRs were required to adhere to their scheduled work activities, such as responding to customer inquiries received since the end of the CSR’s last shift, or making calls to customers.

47. The pre-shift off-the-clock time Plaintiff and all other CSRs spend booting up and logging in directly benefits Defendant and is integral and indispensable to the CSRs’ job responsibilities.

48. Despite knowing Plaintiff and all other CSRs perform this pre-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

49. In fact, Plaintiff complained to her supervisor and her second-level supervisor multiple times about the unlawful off-the-clock work she and other CSRs were forced to complete pre-shift due to Defendant’s policies. In response Plaintiff’s supervisor and second-level supervisor acknowledged that Plaintiff and the other CSRs were expected to complete this work, uncompensated, prior to the start of their shift.

**B. <u>Post-Shift Off-the-Clock Work</u>**

50. Pursuant to Defendant’s policies, training, and direction, Plaintiff and all other CSRs are required to “clock out” of Defendant’s timekeeping system before closing all work applications and systems to make certain they are “clocked out” the moment they stop fielding calls.

51. The off-the-clock post-shift process takes substantial time on a daily basis, with said time ranging from five to ten minutes per shift.

52. Defendant’s CSRs are also not paid for their post-shift off-the-clock work.

53. The post-shift off-the-clock work Plaintiff and other CSRs perform is compensable, directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

54. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs boot up and log into their computers each day, along with the time they log into their telephone systems, and the time they logged off each day.

55. Because Defendant required its CSRs to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spend working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

56. Because Defendant's CSRs typically worked scheduled shifts of at least 40 hours per week, their required pre- and post-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

57. Plaintiff and similarly situated CSRs regularly worked overtime and non-overtime hours for which they were not paid.

**C. <u>Defendant Benefitted from the Uncompensated Off-the-Clock Work</u>**

58. At all relevant times, Defendant has required and directly benefited from the off-the-clock work performed by Plaintiff and all other CSRs in connection with the pre- and post-shift activities described above.

59. At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other CSRs.

60. At all relevant times, Defendant has been able to track the amount of time Plaintiff and all other CSRs spend in connection with pre- and post-shift activities; however, Defendant has

failed to do so and has failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed.

61. At all relevant times, Plaintiff and all other CSRs have been non-exempt hourly employees, subject to the requirements of the FLSA.

62. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the other CSRs in order to pressure them into performing pre- and post-shift work off-the-clock.

63. Defendant expressly trained and instructed Plaintiff and all other CSRs to perform these off-the-clock work activities when they were not "clocked in" to Defendant's timekeeping system.

64. Defendant instructed CSRs to have all work applications and systems fully loaded before the start of their shifts, which takes them in the range of 20 to 25 minutes per day.

65. At all relevant times, Defendant's policies and practices deprived Plaintiff and the CSRs of wages owed for off-the-clock pre- and post-shift activities they performed. Because Defendant's CSRs typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

66. Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff and the CSRs worked over 40 hours and exactly which weeks they worked under 40 hours.

67. Defendant has known or should have known that the time spent by Plaintiff and other CSRs in connection with the off-the-clock pre- and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they have acted in good faith.

68. Despite knowing CSRs performed off-the-clock work before, during, and after their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

69. Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

**<u>FLSA COLLECTIVE ACTION ALLEGATIONS</u>**

70. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> ***All current and former hourly customer service representatives, fraud analysts, or similar positions, who worked for Defendant at any time during the past three years.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

71. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated CSRs.

72. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

73. Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective are not paid the full premium overtime compensation they are due when they work beyond forty (40) hours in a workweek and are not paid any overtime in workweeks where their time cards reflect that they work slightly less than forty (40) hours, such as thirty-eight (38) to forty (40) hours, but actually work in excess of forty (40) hours, for which

they are due both overtime gap time and overtime.

74. Defendant assigns and/or is aware of all the work that Plaintiff and the members of the FLSA Collective perform.

75. Upon information and belief, Defendant utilizes a centralized payroll system which calculates overtime pay for all similarly situated employees in the same or similar manner.

76. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b. Willfully failing to pay overtime gap time for those unpaid hours under 40 associated with unpaid overtime;

c. Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant; and

d. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for off-the-clock work, including the pre-shift boot-up and post-shift shutdown process.

77. Defendant is aware or should be aware that federal law requires it to pay Plaintiff and the members of the FLSA Collective overtime premiums (computed at their regular rate of pay) for hours worked in excess of 40 per workweek.

78. Defendant's unlawful conduct has been and continues to be widespread, repeated, and consistent.

79. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of

whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

80. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issue – the amount of uncompensated pre- and post-shift off-the-clock work – does not vary substantially among the proposed FLSA Collective members.

81. There are many similarly situated current and former CSRs who have been underpaid in violation of the FLSA. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

82. Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant time period, includes hundreds of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

83. All of the estimations discussed herein will be refined after collective discovery is completed.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

84. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> ***All current and former hourly customer service representatives, fraud analysts, or similar positions, who worked for Defendant at any time during the applicable statutory period.***

("Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

85. The members of the Rule 23 Nationwide Class are so numerous that joinder of all

Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

86. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spend on startup and login activities each shift is compensable;

b. Whether the post-shift time Rule 23 Nationwide Class members spend on shutdown activities each shift is compensable;

c. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

d. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

87. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

88. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff has retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

89. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

90. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

91. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

92. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## UNLAWFUL TERMINATION - RETALIATION IN VIOLATION OF THE FLSA

## (Named Plaintiff Only)

93. In April 2025, during a team meeting, Plaintiff complained to her supervisor, Lauren Geibel, and Ms. Geibel's supervisor, Stephen Tillman, that she and the other CSRs were required to perform illegal, uncompensated work prior to clocking in for their shift.

94. Ms. Geibel and Mr. Tillman acknowledged Plaintiff's complaint and admitted that they were aware CSRs were performing uncompensated pre-shift work, but stated that such work

was required to meet Defendant's performance expectations.

95. Between April 2025 and July 2025, Plaintiff continued to raise similar complaints during team meetings, reiterating that Defendant was unlawfully requiring her and other CSRs to perform uncompensated work prior to the start of their scheduled shifts.

96. Plaintiff last complained to Ms. Giebel and Mr. Tillman in July 2025 about Defendant's ongoing unlawful practice of requiring CSRs to work off-the-clock before their shifts.

97. On July 25, 2025, Defendant removed Plaintiff from the FanDuel account.

98. On July 29, 2025, Defendant terminated Plaintiff's employment.

99. Mr. Tillman made the decision to both remove Plaintiff from the FanDuel account and terminate her employment.

100. Plaintiff's most recent complaint regarding Defendant's unlawful off-the-clock work practices occurred within three weeks of her termination.

101. Defendant would not have terminated Plaintiff's employment but for her complaints to Ms. Geibel and Mr. Tillman regarding Defendant's unlawful off-the-clock work practices, which constituted protected activity under the FLSA.

102. The temporal proximity between Plaintiff's complaints to Mr. Tillman and Mr. Tillman's decision to terminate her employment demonstrates that Plaintiff's complaints caused her termination.

103. The only reason provided by Defendant for her termination was that she had not recorded sufficient metrics relating to her working hours over the previous four weeks.

104. Defendant was fully aware that Plaintiff's reduced hours during this period were the result of approved medical absences relating to her recent diabetes diagnosis.

105. Plaintiff did not take any unapproved absences during this period.

106. Because Plaintiff only took approved medical absences and had no unexcused absences, Defendant's proffered reason for her termination was not legitimate and not its true reason.

107. Defendant's stated reason for Plaintiff's termination was pretext for retaliation against Plaintiff for engaging in protected activity under the FLSA.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. – FAILURE TO PAY OVERTIME**

108. Plaintiff re-alleges and incorporates all previous paragraphs herein.

109. At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

110. Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

111. At all times relevant to this action, Plaintiff and the proposed Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

112. Plaintiff and the proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees and were classified as such.

113. Plaintiff and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

114. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

115. At all times relevant to this action, Defendant required Plaintiff and the proposed Collective members to regularly perform 20 to 25 minutes or more of pre-shift computer boot-up and login time, and five to ten minutes of shutdown post-shift shutdown time per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

116. All of the off-the-clock work performed by Plaintiff and the proposed Collective members could have easily been tracked and recorded by Defendant but was not.

117. In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

118. In workweeks where Plaintiff and the proposed Collective members worked forty (40) hours or more, the uncompensated pre- and post-shift off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regularly rate of pay. 29 U.S.C. § 207.

119. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how much time CSRs spent working off-the-clock to complete pre- and post-shift activities, and Defendant could have properly compensated Plaintiff and the proposed Collective members for the boot-up and login work they performed, but did not.

120. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

## COUNT II
## (On an Individual Basis)
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, *et seq*. – RETALIATION (Named Plaintiff only)

121. Plaintiff re-alleges and incorporates all previous paragraphs herein.

122. Plaintiff participated in statutorily protected activity by complaining to her supervisor and second-level supervisor that she and other CSRs were illegally working off-the-clock due to Defendant's policies and practices.

123. Defendant retaliated against Plaintiff in violation of the FLSA, 29 U.S.C. § 215(a)(3), by terminating Plaintiff's employment due to her complaints that she was required to work off-the-clock before her shift start time.

124. As a direct and proximate result of Defendant's adverse actions, Plaintiff has suffered damages, including but not limited to loss of past and future income and employee benefits, mental anxiety and emotional distress, and loss of professional reputation.

125. Section 216(b) of the FLSA makes any employer who violates section 215(a)(3) liable for such legal and equitable relief as is appropriate to effectuate the purposes of the section, including without limitation, employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages, and attorneys' fees.

**COUNT III**
**(On Behalf of the Rule 23 Nationwide Class)**
**BREACH OF CONTRACT**

126. Plaintiff re-alleges and incorporates all previous paragraphs herein.

127. Defendant had binding and valid contracts with Plaintiff and the Rule 23 Nationwide Class to pay for each hour worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class performed on behalf of Defendant.

128. For example, Defendant offered to compensate Plaintiff at a minimum of $15.49 per hour if she agreed to perform services for Defendant as a fraud analyst. Plaintiff accepted Defendant's offer and performed under the contract by fulfilling her duties as a fraud analyst.

129. Plaintiff and the Rule 23 Nationwide Class accepted the terms of Defendant's contractual promises and performed under the contract by doing the job and carrying out the work performed each shift including the unpaid off-the-clock work that was required in connection with pre- and post-shift work activities, described herein.

130. By not paying Plaintiff and the Rule 23 Nationwide Class the agreed upon hourly wage for the off-the-clock work performed, Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class.

131. Plaintiff and the Rule 23 Nationwide Classes remedies under the FLSA are inadequate in this case to the extent Defendant paid Plaintiff and the Rule 23 Nationwide Class more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., a pure "gap time" claim).

132. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and the Rule 23 Nationwide Class spent performing off-the-clock activities.

133. As a direct and proximate result of Defendant's contractual breach, Plaintiff and the Rule 23 Nationwide Class were damaged in an amount to be determined at trial.

**COUNT IV**
**(On Behalf of the Rule 23 Nationwide Class)**
**UNJUST ENRICHMENT**

134. Plaintiff re-alleges and incorporates all previous paragraphs herein.

135. The Count is pled in the alternative to Count III *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

136. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the

work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

137. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

138. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

139. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

140. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

141. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

142. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

143. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ashley Carmer, on behalf of herself and on behalf of the putative FLSA Collective, requests judgment as follows:

a. Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, emails, and telephone numbers of all proposed Collective members, and permitting Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c. Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's common law claims (Counts III and IV);

d. Designating Plaintiff Ashley Carmer as the Representative of the FLSA Collective action and the Rule 23 Nationwide Class, and undersigned counsel as Collective/Class counsel for the same;

e. Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. Declaring Defendant's violations of the FLSA were willful;

g. Declaring Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class by failing to pay Plaintiff and the Rule 23 Nationwide Class for each hour they worked at a pre-established (contractual) hourly rate;

h. Declaring Defendant was unjustly enriched through its failure to pay Plaintiff and the Rule 23 Nationwide Class for the off-the-clock work discussed herein;

i. Granting judgment in favor of Plaintiff and the proposed Collective members as against Defendant and awarding Plaintiff and the proposed Collective members the full amount of damages and liquidated damages available by law;

j. Declaring Defendant violated the FLSA through its termination of Plaintiff;

k. A grant of monetary judgment in favor of Plaintiff and against Defendant awarding all economic, liquidated, and compensatory damages available under the law;

l. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

m. Awarding such other and further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: August 20, 2025

Respectfully submitted,

*/s/ Kevin J. Stoops*

Kevin J. Stoops (P64371)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
kstoops@sommerspc.com